# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

**DON WOODS**  CASE NO. 6:23-CV-00336

**VERSUS**  JUDGE DRELL

**COMMISSIONER OF SOCIAL SECURITY**  MAGISTRATE JUDGE CAROL B. WHITEHURST

## REPORT AND RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be reversed and remanded for further administrative action.

### Administrative Proceedings

This is Claimant's second appeal following remand to the Social Security Administration administrative law judge (ALJ) after the Court ordered the ALJ to re-evaluate Claimant's residual functional capacity in light of new evidence related to Claimant's cervical spine condition. (Civil Action No. 21-cv-01930, Report and Recommendation at Rec. Doc. 11, adopted at Rec. Doc. 12). Upon remand, the ALJ conducted a new hearing on October 11, 2022 (Rec. Doc. 3-3, p. 162-85), and issued a decision on November 16, 2022, again finding Claimant was not disabled (Rec. Doc. 3-3, p. 139-52). Claimant submits that he appealed to the Appeals Council (AC)

on December 20, 2022; however, the record does not include a copy of the AC decision. The Commissioner did not dispute that Claimant appealed to the AC, and the Court presumes the AC decision was erroneously left out of the record. See *Bowen v. City of New York*, 476 U.S. 467, 483 (1986) (The Secretary may waive the failure to exhaust administrative remedies by failing to object). Thus, the Court finds that Claimant sufficiently exhausted administrative remedies before filing this second action.

## Summary of Pertinent Facts

The Court adopts its previous factual findings following Claimant's first appeal in Civil Action No. 21-cv-01939 at Rec. Doc. 11. In summary, Claimant was 44 years old at the time of the ALJ's decision on remand. He has a tenth-grade education and past relevant work experience as a construction worker, grocery stocker, and fast-food worker. He alleges disability beginning October 1, 2018, due to pulmonary and cardiac issues as well as neck and back pain. Extensive medical records considered at the first hearing show a history of coronary artery disease and hyperlipidemia, with a heart stent placed in 2015 and heart catheterization in 2018. He has been diagnosed with eosinophilia and has suffered from asthma and shortness of breath since at least 2018. In late 2019 and into 2020, he began with back pain radiating into his left leg and right sided neck pain radiating into the right shoulder and arm with chest pain. In January 2021 (after the first ALJ hearing and before the

AC review), Claimant underwent an emergency cervical fusion at C6-7 due to severe canal stenosis with cord compression and disc protrusions, leading to a drag in his left foot, incontinence, and difficulty urinating. (See No. 21-cv-01930, Rec. Doc. 11 and medical records referenced therein). The AC failed to consider evidence of Claimant's post-ALJ hearing cervical fusion. Thus, this Court remanded the case and instructed the ALJ to consider the new evidence regarding the cervical fusion. On remand, Claimant submitted the following new evidence:

- A January 26, 2021 cervical MRI revealed severe degenerative canal stenosis at C6-7 where the cord was compressed by bilateral paracentral disc protrusions with associated increased cord T2 STIR signal and varying degrees of neuroforaminal stenoses, moderate bilaterally at C3-4 and C6-7. A lumbar MRI revealed lumbar degenerative disc disease and spondylosis at multiple levels, including bulging, arthropathy and ligament flavum thickening at L4-5. (Rec. Doc. 3-4, p. 167-70).

- Due to severe cord compression at C6-7, Dr. Ilyas Munshi performed an emergency cervical fusion on January 27, 2021. (Rec. Doc. 3-4, p.172-76). In follow up with his primary care physician, Dr. Collins, he complained of neck pain radiating to his arm, shoulders, and legs through April 2021. By July 2021 he was complaining primarily of lower back, leg and chest pain, for which repeat scans were requested. (Rec. Doc. 3-4, p. 339-50). Claimant underwent physical therapy between February and April 2021. (Rec. Doc. 3-4, p. 217-65).

- Claimant returned to the emergency room in June 2021 with chest pain, shortness of breath and lower back pain. He was discharged with medication and instructions to see his primary care doctor. (Rec. Doc. 3-4, p. 321-27).

- In December 2021, Claimant reported ongoing bilateral lower extremity numbness and tingling with pain as well as increased anxiety and episodes of hypotension with dizziness. Dr. Collins noted that they had been attempting to get Claimant back for a neurosurgery consult, but this had been difficult. They had been unable to get insurance approval for repeat scans. (Rec. Doc.

3-4, p. 361-64). In subsequent follow up visits through May 2022, his complaints were consistent for radiating neck pain, light headedness, and shortness of breath. He was noted as following up for eosinophilia and asthma at Opelousas General, and he was seeking a pain management referral. Claimant admitted to smoking marijuana regularly, such that pain management was not possible. (Rec. Doc. 3-4, p. 374-85).

- Claimant returned to physical therapy in June 2022 for continued pain, tingling and numbness in his legs. He indicated that he could only walk with a cane or crutches and that he needed some help but was able to manage most aspects of self-care. He reported only being able to walk with his quad cane, that his reflexes were more reflexive, and that he had trouble controlling his knee. By the last visit, it was noted that he was able to walk 100 feet with quad cane before needing to sit due to pain, shaking legs, and his left leg buckling. His activities were very restricted due to back and leg pain. (Rec. Doc. 3-4, p. 275-319).

- In February 2022, Claimant consulted with neurosurgeon Dr. Stanley Hoang. By August 2022, Dr. Hoang reported that Claimant experienced back pain, bilateral leg numbness, and difficulty with gait, all progressing despite conservative treatment, as well as bilateral hyper-reflexia in both patella. A cervical MRI had demonstrated multi-level spondylosis with disc protrusion without significant central or foraminal stenoses. Due to signs and symptoms of myelopathy with worsening gait, numbness, hyperreflexia, and an unremarkable MRI, Dr. Hoang requested a thoracic MRI. An August 30, 2022 lumbar MRI revealed left-sided foraminal disc protrusion causing moderate impingement of the exiting L3 nerve root, without spinal canal stenosis, and mild disc bulge with mild thecal effacement at L4-5 and L5-S1. A cervical MRI revealed postoperative changes at C6-7 and mild myelomalacia. Ultimately, Dr. Hoang concluded that Claimant was not a surgical candidate. He was instructed to follow up with Dr. Collins for medication management until seen by pain management for issues of lumbar spondylosis, cervical stenosis, myelopathy, peripheral neuropathic gait, and history of fusion of cervical spine. (Rec. Doc. 3-4, p. 461-556).

- Claimant was evaluated by Dr. Gregory Rubino in October 2022 for radiating neck pain. Dr. Rubino observed that Claimant walked with a cane and felt as if his left leg was not supporting him. He had significant stiffness and mild diffuse weakness in the legs, more significantly in the left. He walked with a significant limp and rigid gait. He had a sensory level at T6 on the left and

4

severe hypertonicity in the lower extremities with no Hoffman's reflex. He had severe stiffness and progressive weakness and numbness in his leg suggestive of cord compression. He needed an urgent thoracic MRI to determine whether he had an extra-axial lesion compressing the cord such as meningioma or intrinsic cord tumor. (Rec. Doc. 3-4, p. 560-61).

Claimant testified at the hearing that he hasn't driven since his neck surgery. (Rec. Doc. 3-3, p. 175). He lives with his mother who tends to daily responsibilities, such as cooking, shopping, and cleaning. (Rec. Doc. 3-3, p. 178-79).

The ALJ found that Claimant was not disabled because he is capable of performing sedentary work, with minimal restrictions, and a significant number of qualifying jobs existed in the national economy. Claimant now appeals.

## Analysis

### A. Standard of Review

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a

'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Id.* (citations omitted).

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173. A court must carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1022. Conflicts in the evidence and credibility assessments are for the Commissioner to resolve, not the courts. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991). Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience. *Wren v. Sullivan*, 925 F.2d at 126.

**B.** **Entitlement to Benefits**

The Disability Insurance Benefit program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. See 42 U.S.C. § 423(a). See also *Smith v. Berryhill*, 139 S.Ct. 1865, 1772 (2019). Supplemental Security Income SSI provides

income to individuals who meet certain income and resource requirements, have applied for benefits, and are disabled. 42 U.S.C. § 1382(a)(1) & (2). See also *Smith v. Berryhill*, 139 S.Ct. at 1772. A person is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled if his physical or mental impairment or impairments are so severe that he is unable do his previous work and considering his age, education, and work experience, cannot participate in any other kind of substantial gainful work that exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

### C. **Evaluation Process and Burden of Proof**

A sequential five-step inquiry is used to determine whether a claimant is disabled. The Commissioner must determine whether the claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do the kind of work he did in the past; and (5) can perform any other work. 20 C.F.R. § 404.1520.

Before going from step three to step four, the Commissioner evaluates the claimant's residual functional capacity by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the record. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 404.1545(a)(1). The claimant's residual functional capacity is used at the fourth step to determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work. 20 C.F.R. § 404.1520(e).

The claimant bears the burden of proof on the first four steps; at the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy. *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016); *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Fraga v. Bowen*, 810 F.2d at 1302. If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

## D.     The ALJ's Findings and Conclusions

The ALJ determined at step one that Claimant has not engaged in substantial gainful activity since October 1, 2018. This finding is supported by substantial evidence in the record.

At step two, the ALJ found that Claimant has the following severe impairments: coronary artery disease, asthma, eosinophilia, obesity, hyperlipidemia, hypertension, and cervical and lumbar degenerative disc disease. (Rec. Doc. 3-3, p. 142). This finding is supported by substantial evidence in the record.

At step three, the ALJ found that Claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (Rec. Doc. 3-3, p. 143-45). Claimant challenges this finding. (See Rec. Doc. 4, p. 6 and Rec. Doc. 6).

The ALJ found that Claimant had the residual functional capacity (RFC) to perform sedentary work with the ability to tolerate occasional exposure to fumes, odors, dusts, gases, and poor ventilation. (Rec. Doc. 3-3, p. 145-50). Claimant challenges this finding.

At step four, the ALJ found Claimant is unable to perform past relevant work. (Rec. Doc. 3-3, p. 150). Claimant does not challenge this finding.

At step five, the ALJ found Claimant is capable of performing sedentary jobs, a significant number of which exist in the national economy. (Rec. Doc. 3-3, p. 150-51). Claimant challenges this finding.

### E. The Allegations of Error

Although Claimant did not directly address the ALJ's finding that he did not meet a listing, Claimant raised the issue in his appellant brief and more fully addressed it in his reply. The Commissioner responded to the argument in the appellee brief. Thus, the Court shall consider whether the ALJ properly determined that Claimant did not meet a listing as the first allegation of error. Otherwise, Claimant alleges the ALJ erred in assessing Claimant's RFC as sedentary and finding that he is capable of performing a significant number of available jobs. Claimant initially

### F. Whether the ALJ erred in the listing assessment.

The ALJ analyzed listings 1.15 (regarding disorder of the skeletal spine resulting in compromise of a nerve root) and 1.16 (regarding lumbar spine), among others which Claimant does not specifically challenge. Claimant's challenge is rooted in the ALJ's purported failure to consider the MRI of evidence of a L3-4 herniation impinging on the nerve root.

Both listing 1.15 and 1.16 require a finding of a documented medical need for an assistive device requiring to some extent the use of both hands, such as bilateral

canes, a walker, or a wheeled device. See 20 C.F.R. § Pt. 404, Subpt. P, App. 1. As the ALJ noted, the record does not show a documented medical need for a qualifying assistive device. Accordingly, the ALJ did not err in concluding that the Claimant did not meet a listing.

    **G.**    **<u>Whether the ALJ erred in assessing a sedentary RFC.</u>**

Claimant challenges the ALJ's RFC finding and urges the Court to reverse and award benefits. A residual functional capacity assessment "is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Perez v. Barnhart*, 415 F.3d at 462 (citing 20 C.F.R. § 404.1545(a)(1)). The ALJ is responsible for determining a claimant's residual functional capacity. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In making a finding in that regard, the ALJ must consider all of the evidence in the record, evaluate the medical opinions in light of other information contained in the record, and determine the plaintiff's ability despite any physical and mental limitations. *Martinez v. Chater*, 64 F.3d at 176. The evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be disabled. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983). In making a residual functional capacity assessment, an ALJ must consider all symptoms and the extent to which the symptoms can reasonably be

11

accepted as consistent with the objective medical evidence and other evidence. The ALJ must consider the limitations and restrictions imposed by all of an individual's impairments, even those that are not severe. *Giles v. Astrue*, 433 Fed. App'x 241, 245 (5th Cir. 2011) (citing 20 C.F.R. § 404.1545).

In determining that Claimant is capable of performing sedentary work, the ALJ did little more than summarize the medical records and rely in part upon the state agency consultants' reports, which pre-dated Claimant's neck surgery. The ALJ noted findings of Claimant's primary care physician, Dr. Collins, but wholly ignored the medical evidence regarding Claimant's ongoing back pain and the significant effect of his spinal issues on the use of his legs. Although the record does not include a prescription for the use of a cane or assistive device, the record amply supports that Claimant experienced progressive difficulty with gait and leg weakness. Significantly, in October 2022, Dr. Gregory Rubino indicated that Claimant's severe stiffness and progressive weakness and numbness was suggestive of cord compression, requiring an urgent thoracic MRI to determine whether he had an extra-axial lesion compressing the cord such as meningioma or intrinsic cord tumor. (Rec. Doc. 3-4, p. 560-61). The ALJ's finding is devoid of any reference to Dr. Hoang or Dr. Rubino, whose findings support that Claimant suffers from significant limitations affecting his ability to work. Thus, the Court agrees that the ALJ erred and that his findings are not supported by substantial evidence in the record. The

record evidences a need for physical restrictions far more limiting than the ALJ's finding and an appropriately accommodating RFC. Accordingly, the Court will once again remand the case with an instruction to re-evaluate Claimant's RFC and whether Claimant is capable of performing any work.

## Conclusion and Recommendation

For the foregoing reasons, this Court recommends that the Commissioner's decision be REVERSED and REMANDED to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) with instructions to again re-evaluate the claimant's residual functional capacity, specifically imposing physical restrictions commiserate with Claimant's spinal condition, and to determine whether, based upon a properly evaluated RFC, he is disabled. Inasmuch as the reversal and remand recommended herein falls under sentence four of Section 405(g), any judgment entered in connection herewith will be a "final judgment" for purposes of the Equal Access to Justice Act ("EAJA").[1]

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after

---

[1] See, *Richard v. Sullivan*, 955 F.2d 354 (5th Cir. 1992), and *Shalala v. Schaefer*, 509 U.S. 292 (1993).

receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.[2]

Signed in Lafayette, Louisiana, this 31st day of July, 2023.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE

---

[2] See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1).